**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PETER WILSON, on behalf of himself and others similarly situated, | : : : |
| Plaintiff, | : : |
| v. | : Misc. Case No. 2:25-mc-34 : |
| DIALPAD, INC. | : : |
| Non-Party Subpoena Recipient. | : : |
| PETER WILSON, on behalf of himself and others similarly situated, | : Underlying Action Pending in the U.S. : Southern District of Texas : |
| Plaintiff | : : Case No. 4:24-CV-04003 |
| v. | : : |
| TEXONA MARKETING LLC D/B/A COLLINS GHOSTWRITING | : : : |
| Defendant. | : : |

**Plaintiff Peter Wilson's Motion to Compel
<u>Production of Documents Pursuant to Rule 45 Subpoena</u>**

Pursuant to Fed. R. Civ. P. 45(d) and (g), Plaintiff Peter Wilson ("Plaintiff"), by his attorneys, moves this Court for an order compelling third-party DialPad, Inc. ("DialPad") to produce documents responsive to a subpoena in connection with *Wilson v. Texona Marketing LLC*, Civil Action No. 4:24-cv-4003, pending in the United States District Court for the Southern District of Texas (the "Litigation"). Plaintiff seeks a single category of documents relevant to Plaintiff's claims: data identifying telephone numbers and associated calling data that DialPad possesses for the telemarketing activities of the Defendant, Texona Marketing. Texona Marketing itself does not have complete access to such information that it concedes is relevant in

its own DialPad account and instead has identified DialPad as the entity possessing it.

Because the information sought here is relevant, and DialPad has failed to provide it, this Court should compel DialPad to fully comply.

## Background and Meet and Confer Efforts

"Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers,' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms,' *id.* § 2(9)." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019).

"[T]he law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). . . . [P]rivate suits can seek either

monetary or injunctive relief. [47 U.S.C. § 227(c)(5)]. . . . This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Id*. at 649-50.

This matter stems from a putative class action arising under the TCPA for the receipt of telemarketing calls and text messages to numbers on the National Do Not Call Registry. *See* Exhibit 1, Complaint against Texona Marketing LLC. Plaintiff Wilson's telephone number, (216) XXX-XXXX, is a telephone number that is used for residential purposes and has been on the National Do Not Call Registry since 2007. *Id.* Despite that, Mr. Wilson received at least 9 telemarketing text messages from the telephone numbers 469-382-2921, 469-296-9590, 469-373-4909, 323-925-3759, and 323-285-2988, between December 23, 2023 and present. These numbers are serviced by DialPad. Screenshots of some of these messages appear below:



*Id.* at ¶ 20. Contrary to these text messages, the Plaintiff had never inquired about the

Defendant's services. *Id.* at ¶ 21. The Defendant contacted the Plaintiff out of the blue and refused to stop when asked repeatedly. *Id.* Because they were sent to encourage the purchase of ghostwriting services, the text messages were telemarketing. *Id.* at ¶ 23.

In their discovery responses, Texona identified that DialPad is one of the services it used to send text messages. *See* <u>Exhibit 2</u>, Selection of Discovery Responses ("Defendant used Dial Paid (sic) for communications with Plaintiff.") Indeed, Defendant's deposition confirmed that DialPad was used to contact putative class members as well as the Plaintiff:

> Q. So when a telephone number is in the CRM, how does it get called? Is there a software
> that's used?
> A. Yes.
> Q. What software?
> A. DialPad.
> Q. And is DialPad a texting or calling software?
> A. Both…
>
> Q. How long has Texona used DialPad for?
> A. I'd say we've been using it for about two to three years now.

*See* <u>Exhibit 3</u>, Selection of Dep. of Andrew Hales. Indeed, Texona uses DialPad *to this day*:

> Q. So we were talking about how the current system Texona uses is DialPad to send texts and calls; correct?
> A. Mm-hmm.
> Q. Is that a "yes"?
> A. Yes. Currently we do use DialPad, yeah…
> Q. And so there are no third-party call centers involved in the calling?
> A. No, they're not.
> Q. How does the DialPad system work in terms of the telephone numbers getting onto the system?
> A. So as you see the lead, or whoever the lead is assigned to, they would just simply see the lead directly from the system, or the CRM, right. And then we do have a specific button built in the CRM that when you hit the call button, it's going to directly, you know, make the call, place the call through the user's DialPad account.
> Q. Got it. And is there a separate text button, other than call?
> A. The user can just, you know, manually text the client because obviously they are able to see the number on the CRM.
> Q. They manually text the client, but using the DialPad software?
> A. Exactly.

Given DialPad's role in the telemarketing at issue, the Plaintiff issued a subpoena to DialPad on April 29, 2025. The subpoena is attached as <u>Exhibit 1</u>. DialPad was served[1] via certified mail restricted delivery on its Registered Agent in Harrisburg[2], as demonstrated in <u>Exhibit 7</u>. The subpoena sought:

> Request No. 1: Please provide all available Call Detail Records (CDRs), including all available associated fields for the *account* identified by the DIDs enumerated above. For

---

[1] Such service is valid under Rule 45(b)(1), as Dialpad's registered agent was confirmed served by virtue of the executed Restricted Delivery Certified Mail "Green Card." *See, e.g.*, *Jordan v. Glass*, 2010 WL 3023347, at *1, n. 1 (D.N.J. July 23, 2010) (finding that the plaintiff had properly served non-party via certified mail "because either he or someone authorized on his behalf signed an acknowledgement of receipt of plaintiff's subpoena" and there was evidence in the form of an email exchange that indicated that the non-party received the subpoena); *New Jersey Bldg. Laborers Statewide Ben. Funds & Trs. Thereof v. Torchio Bros.*, No. CIV A 08-552, 2009 WL 368364, at *2 (D.N.J. Feb. 11, 2009); *Alfamodes Logistics Liab. Co. v. Catalent Pharma Sols., LLC*, No. CIV.A. 09-3543, 2011 WL 1542670, at *1 (E.D. Pa. Apr. 25, 2011). Service in this manner also comports with Rule 4(e)(1) and PA. R.C.P. 234.2, which permits service of a subpoena "by any form of mail requiring a return receipt, postage prepaid, restricted delivery." Official Note to PA. R.C.P. 403 explains that "The United States Postal Service provides for restricted delivery mail, which can only be delivered to the addressee or his authorized agent;" in other words, Restricted Delivery is a special service that ensures delivery "to the named person," as per Rule 45's requirements. *Yelland v. Abington Heights Sch. Dist.*, No. CV 3:16-2080, 2017 WL 4122465, at *4 (M.D. Pa. Sept. 18, 2017) ("[T]he text of Rule 45(b) does not unequivocally require personal service, but instead, service 'requires delivering a copy' of the subpoena to the witness without specifying the method of delivery."). Here, the subpoena was served on Terri L McEntee, who is the agent for Cogency Global Inc., Dialpad's registered agent. As such, the use of *restricted delivery* certified mail (as opposed to regular certified mail) ensured that Defendant's agent was personally served with the subpoena, as mandated by Rule 45(b)'s requirement that the subpoena be delivered "to the named person." In any event, as in *Jordan*, DialPad acknowledged service of the subpoena and did not object to the same.

[2] Defendant's registered office in Harrisburg lies 93 miles in straight-line distance from the place where production is sought, at counsel's office in Glenside. FED. R. CIV. P. 45(c)(2)(A); *Langsam-Borenstein P'ship by Langsam v. NOC Enters., Inc.*, 137 F.R.D. 217, 218 (E.D. Pa. 1990). Glenside, where compliance is required, lies within *this* Court's territorial jurisdiction, in Montgomery County. FED. R. CIV. P. 45(d)(2)(B)(i).

[2] Defendant's registered office in Harrisburg lies 93 miles in straight-line distance from the place where production is sought, at counsel's office in Glenside. FED. R. CIV. P. 45(c)(2)(A); *Langsam-Borenstein P'ship by Langsam v. NOC Enters., Inc.*, 137 F.R.D. 217, 218 (E.D. Pa. 1990). Glenside, where compliance is required, lies within *this* Court's territorial jurisdiction, in Montgomery County. FED. R. CIV. P. 45(d)(2)(B)(i).

the avoidance of doubt, this request seeks *all* available CDRs and *all* available fields for this subscriber in those CDRs, even for telephone numbers other than those listed.

Request No. 2: Please provide all available Message Detail Records (MDRs), including all available associated fields for the *account* identified by the DIDs enumerated above. For the avoidance of doubt, this request seeks *all* available MDRs and *all* available fields for this subscriber in the MDR, even for telephone numbers other than those listed.

Request No. 3: Please provide all available customer billing and payment records and account information for the account identified by the DIDs enumerated above. For the avoidance of doubt, this request seeks *all* available customer and billing records for this subscriber, even for telephone numbers other than those listed. This request also seeks, but is not limited to, a copy of any sign-up forms, contracts, or other information provided to you or signed by the customer.

Request No. 4: Please provide any available complete recordings for calls sent to or received from 216-533-XXXX (the Plaintiff's phone number), for the account identified by the DIDs enumerated above.

DialPad provided its response to the subpoena on May 21, 2025. A copy of the subpoena response is attached as <u>Exhibit 5</u>. In that response, DialPad only provided one objection as follows (yet did not provide responses or objections to any of the documents sought in any of the other responses):

Request No. 1 of the subpoena, as currently drafted, is overbroad and imposes an undue burden. Producing the call detail records for every phone number associated with the customer's account since 2023 (nearly 500 numbers total) would require an extensive effort, taking several weeks that our Legal team does not have the bandwidth for. We're happy to work with your team to achieve the relevant information needed, but to do so would require a significant limitation of the scope of Request No. 1. I'm happy to hop on a call to discuss an adequate solution at your convenience, let me know your thoughts.

Despite the fact that Texona decided to engage in a massive telemarketing campaign, all of which is relevant to the underlying lawsuit, and *all* records of which the Plaintiff is unquestionably entitled to, the Plaintiff attempted to offer an accommodation:

Hello, Alexandra. What if we started with the calling records for just the Caller ID(s) that contacted the Plaintiff via text. They are: (469) 382-2921, 323-925-3759, 469-296-9590 However, we can't change the temporal scope. That's within the class period we're pursuing.

No response was received regarding this offer of compromise (which, following the deposition

of Texona, the Plaintiff does not believe is appropriate) and no response was received to the other requests. Pursuant to Local Rule 26.1(f), counsel for Plaintiff certifies that the parties, after reasonable effort, are unable to resolve this discovery dispute. *See* Exhibit 5.

This motion follows.

**Argument**

I.  **DialPad Should Be Compelled to Produce Records of Pre-Recorded Calls Made, as well as any Evidence of Purported Consent.**

Requesting a list of persons that were the recipients of telemarketing calls is a standard practice in TCPA class litigation. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 3746118, at *4 (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class). Such information is relevant because it speaks to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, ascertainability, commonality, and predominance. For these reasons, production of call lists and other call data is routinely ordered in courts across the country. *See, e.g., Warren v. Credit Pros Int'l Corp.,* No. 3:20-cv-763-TJC-MCR, 2021 U.S. Dist. LEXIS 79150, at *21 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because Defendant has not moved to bifurcate class and merits discovery and such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed.R.Civ.P."); *O'Shea v. Am. Solar Sol., Inc.,* No. 14CV894-L (RBB), 2016 WL 701215 (S.D. Cal. Feb. 18, 2016) (granting

plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL 1791910, at *4 (S.D. Cal. Apr. 16, 2018) (compelling production of call list); *Gossett v. CMRE Fin. Servs.,* Case No. 15cv803 MMA (NLS), 2015 WL 6736883, at *3 (S.D. Cal. Oct. 30, 2015) (granting a motion to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case"); *see also, e.g.*, *Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc.,* 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (Nolan, J.) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp.*, 2013 WL 5348377, at *2 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality").[3] As discussed below, the calling data goes directly to the elements necessary to certify a class.

In addition, as one court summarized when granting a motion to compel for the calling records in a TCPA case:

> This information will assist Plaintiff's experts in determining which phone numbers were tied to cellular phones, which calls were for telemarketing purposes, which numbers were on the National Do Not Call Registry ("NDNCR") and which calls were made using an automatic telephone dialing system ("ATDS"). The information is

---

[3] *See also Mbazomo v. ETourandTravel, Inc*., No. 2:16-CV-02229-SB, 2017 WL 2346981, at *5 (E.D. Cal. May 30, 2017) (call logs and dialing lists relevant to numerosity and commonality); *Ossola*, 2015 WL 5158712, at *7 ("Call data is relevant, and thus produced as standard practice . . . in cases where the defendant is the alleged dialer."); *Gossett v. CMRE Fin. Servs*., 142 F. Supp. 3d 1083, 1087 (S.D. Cal. 2015) (same); *Thrasher v CMRE Financial Services, Inc.*, 2015 U.S. Dist. LEXIS 34965 (S.D. Cal. March 13, 2015) (same); *Gusman v. Comcast Corp.*, 298 F.R.D. 592 (S.D. Cal. 2014) (same); *Webb v. Healthcare Revenue Recovery Grp. LLC*, 2014 WL 325132, at *2-3 (N.D. Cal. Jan. 29, 2014) (same).

> therefore relevant to the numerosity, commonality, and typicality inquiries the Court will undertake to decide Plaintiff's motion for class certification under Rule 23.

*See Mey v. Frontier Commc'ns Corp.*, No. 13-cv-01191-MPS, ECF No. 102 (D. Conn. Dec. 5, 2014). Here, like *Mey*, the Plaintiff's expert will determine which calls qualify for membership in the class in order to prepare this case for class certification.

Having complete calling data is necessary to evaluate a class certification motion. On January 30, 2020, the District of New Jersey certified a TCPA class action like this one relying extensively on expert witness testimony that reviewed calling logs of the exact type sought here, in *Johnson v. Comodo Grp.*, No. 16-4469 (SDW) (LDW), 2020 U.S. Dist. LEXIS 18033, at *21-22 (D.N.J. Jan. 31, 2020):

> Plaintiff's methodology is testable, reliable, and sufficiently capable of identifying putative class members. It has already been used in other TCPA class actions. *See, e.g., Shamblin v. Obama for Am.*, Civ. No. 13-2428, 2015 WL 1909765, at *3 (M.D. Fla. Apr. 27, 2015); *Reyes v. BCA Fin. Servs., Inc.*, Civ. No. 16-24077, 2018 WL 3145807, at *13 (S.D. Fla. June 26, 2018); *Krakauer v. Dish Network, LLC*, Civ. No. 14-333, 2015 WL 5227693, at *10 (M.D.N.C. Sept. 8, 2015). Similarly, the vendors that Ms. Verkhovskaya plans to use, such as LexisNexis, have been reliably used in past TCPA litigations to identify telephone number users/subscribers and their addresses. *See, e.g., McCurley v. Royal Seas Cruises, Inc.*, 331 F.R.D. 142, 159 (S.D. Cal. 2019) (approving the use of LexisNexis to identify class members and summarizing cases holding the same); *Krakauer*, 2015 WL 5227693, at *8-10 (holding that Ms. Verkhovskaya's use of LexisNexis to identify putative TCPA class members is a reliable methodology and denying motion to exclude).
>
> Although some of the calls on the call log that Defendant produced and that Ms. Verkhovskaya plans to rely on fall outside the class definition, these calls appear to be statistically insignificant and filterable (*e.g.*, test calls placed to Defendant's employees and unconnected/incomplete calls). (D.E. 179 at 23.) Calls to landline numbers can be similarly filtered. (D.E. 115-6 ¶ 31.) Furthermore, Ms. Verkhovskaya's reliance on the VICIdial system codes used in the call log is justified.

*Id*. When discovery is not bifurcated, a plaintiff in a TCPA case must have the records of calling activity to prepare for trial to resolve the requestion of liability and damages. As *this very Court*

held in a TCPA case while compelling the same data:

> Frey has shown that the outbound call list is relevant to class certification and to the merits of his claim. *See, e.g.*, Gossett v. CMRE Fin. Servs., 142 F.Supp.3d 1083, 1087 (S.D. Cal. 2015) ("This court finds that the outbound call lists are relevant to the class claims and meritorious claims and defenses in this case and overrules [the defendant's] objections to the requests."). The call records can be used to determine which calls were made to cell phone numbers, a fact that is relevant to the numerosity and typicality requirements of Rule 23(a). *See* Thrasher v. CMRE Fin. Servs., Inc., No. 14-cv-1540, 2015 WL 1138469 at *2 (S.D. Cal. March 13, 2015) ("The court finds that the outbound call list is reasonably calculated to identify the number and recipients of calls made during the class period, which is relevant to Rule 23 requirements."). (*See* Doc. No. 36 at p. 12 (defining the putative class as all individuals to whom Frontier or its vendor made a non-emergency telephone call "to a cellular telephone number or to a number where the recipient is charged for the call").) It is also relevant to the question of liability and damages under the TCPA. *See* 47 U.S.C. § 227(b)(1)(A)(3) (prohibiting calls "using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service . . . ."); *id.* § 227(b)(3)(B) (creating a private right of action to recover "for actual monetary loss" caused by a violation of the TCPA or "to receive $500 in damages for each such violation").
>
> EAG argues that Frey is not entitled to this personal identifying information pre-class certification, but, as discussed below, the Court did not bifurcate the discovery period in this matter. As such, Frey was required to seek discovery on both his individual claim and his class claim at the same time and could not wait until after the Court ruled on his motion for class certification to request this relevant information.

*Frey v. Frontier Utils. Ne. Llc*, No. 19-2372-KSM, 2020 U.S. Dist. LEXIS 260620 *5-6 (E.D. Pa. Apr. 13, 2020). For the same reasons in *Frey*, the motion to compel should be granted here as this information relates to the information sought in Request No. 1, 2 and 4. Furthermore, Request No. 3 seeks the billing information for the account owners. This information is similarly discoverable because the Plaintiff needs to establish who owns the account and telephone numbers at issue, together with the terms of their account agreement, and who paid for the calls at issue. Those entities may be ultimately responsible if it is an entity other than the Defendant.

**II.     DialPad's Failure to Object to Request Nos. 2-4 Means that the Information Should be Produced.**

Federal Rule of Civil Procedure 45(d) sets forth the procedure by which a non-party may object to a subpoena and be protected from compliance. DialPad does not assert an objection to Requests No. 2-4, and as such those requests should be compelled. *See e.g. Bove v. Worlco Data Systems, Inc.,* 1987 U.S. Dist. LEXIS 1673, *4 (E.D. Pa. 1987) ("Jeffrey Price did not, as required by Fed. R. Civ. P. 45, serve written objections on defendants or move to quash the subpoena in advance of the return date… We shall, however, require Mr. Price to produce all documents responsive to the subpoena as to which no claims of privilege have been raised.").

**III.    DialPad's Single Underdeveloped Objection to a Single Request Should be Overruled.**

DialPad's sole objection to Request No. 1 is below:

> Request No. 1 of the subpoena, as currently drafted, is overbroad and imposes an undue burden. Producing the call detail records for every phone number associated with the customer's account since 2023 (nearly 500 numbers total) would require an extensive effort, taking several weeks that our Legal team does not have the bandwidth for. We're happy to work with your team to achieve the relevant information needed, but to do so would require a significant limitation of the scope of Request No. 1. I'm happy to hop on a call to discuss an adequate solution at your convenience, let me know your thoughts.

*See* Exhibit 5. This is insufficient. An undue burden can be determined by looking at the relevance of the documents, the need for the documents, the breadth of the document request, the time period covered by the request, the particularity with which the documents are described, and the burden imposed. The onus of establishing undue burden, however, is on the party challenging the subpoena. The objecting party must establish the claimed burden of producing documents with specificity. *Gabe Staino Motors*, *Inc. v. Volkswagen of America, Inc.*, 2003 U.S. Dist. LEXIS 3194, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003). Thus, the alleged contemnor must present evidence beyond "a mere assertion" of the inability to produce the documents as

well as establish that it has made "in good faith all reasonable efforts to comply." *See Harris I*, 47 F.3d at 1324; *Secretary of Labor v. Altor Inc.*, 783 F. App'x 168, 171 (3d Cir. 2019) (same).

Furthermore, even if DialPad could show that the documents requested were unduly burdensome (they have not), that does not end the analysis. "While cost and burden are critical elements in determining accessibility, a showing of undue burden is not sufficient by itself to trigger a finding of inaccessibility." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 301 (S.D.N.Y. 2012).

Indeed, this rule is with good cause because of the TCPA's statutory damages of $500 per violative text, courts in the Third Circuit and elsewhere have required voluminous documents to be produced if they are relevant, like these records indisputably are. Indeed, in a similar case a nearly identical motion to compel was granted in the Eastern District of Pennsylvania over a defendant's burden objection. *See Perrong v. Victory Phones, LLC*, No. 20-cv-5317, ECF No. 68 (E.D. Pa., Apr. 5, 2022), attached as Exhibit 6. In that case, the defendant supplied an affidavit stating that the cost of retrieval of the calling data was approximately $43,000. *See* Exhibit 2 at *1. In overruling the objection and compelling the production, the court held, "the call records are relevant to class certification…in addition to being relevant to both class certification and the merits, the call records are also proportional. Victory Phone estimates that production will cost about $43,000…Mr. Perrong estimates that perhaps *millions* of recipients might have been charged for prerecorded phone calls made on behalf of this particular client, potentially resulting in a sizeable statutory damages award." *Id.* at * 2.

## Conclusion

For the reasons explained above, Plaintiff respectfully request that the Court enter an Order:

12

A. Granting this Motion;

B. Compelling DialPad to provide the requested documents responsive to the subpoena; and

C. Providing such other and further relief as the Court deems appropriate.

                PLAINTIFF,
                By his attorneys

Dated: June 15, 2025

                */s/ Andrew Roman Perrong*
                Andrew Roman Perrong, Esq.
                Perrong Law LLC
                2657 Mount Carmel Avenue
                Glenside, Pennsylvania 19038
                Phone: 215-225-5529 (CALL-LAW)
                Facsimile: 888-329-0305
                a@perronglaw.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 15, 2025, the foregoing was served via electronic mail on counsel for the Defendant in the underlying action.

June 15, 2025

                */s/ Andrew Roman Perrong*
                Andrew Roman Perrong, Esq.
                Perrong Law LLC
                2657 Mount Carmel Avenue
                Glenside, Pennsylvania 19038
                Phone: 215-225-5529 (CALL-LAW)
                Facsimile: 888-329-0305
                a@perronglaw.com